IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TARA BROOKS, ELOISE BROOKS and ROBERT BROOKS, both individually and as Special Administrators of the Estate of Tommie Moore, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>MV TRANSPORTATION, INC. a/k/a MV TRANSPORTATION, INC. OF CALIFORNIA,<br><br>Defendant. | Case No. 18-cv-3940<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Tara Brooks, Eloise Brooks, and Robert Brooks ("Plaintiffs"), individually and as Special Administrators of the Estate of Tommie Moore, bring suit against Defendant MV Transportation, Inc. a/k/a MV Transportation, Inc. of California ("Defendant") for negligence. Currently before the Court is Defendant's motion to dismiss Plaintiffs' complaint for failure to state a claim [9]. For the reasons explained below, Defendant's motion [9] is granted.

**I.     Background[1]**

Plaintiffs are the adult siblings and sole descendants of Tommie Moore ("Moore"), who was violently assaulted and killed by Roger Scoby ("Scoby") on March 30, 2017. At the time of Moore's death, Scoby was employed by Defendant to provide patient care transportation services. Moore met Scoby when he provided her with patient care transportation services and developed a

---

[1] For purposes of Defendant's motions to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiffs' complaint. See [1-1]; *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

personal relationship with him. Scoby killed Moore in her home, at a time when Scoby was not on duty working for Defendant. See [15] at 1-2.

In 1993 (many years before he was hired by Defendant), Scoby was convicted of criminal trespass to vehicle and sentenced to probation. In 1994, Scoby was convicted of armed robbery and served ten years in prison. On information and belief, Defendant performed a background check on Scoby prior to hiring him. Therefore, the complaint alleges, Defendant knew or should have known of Scoby's criminal convictions and propensity for violence. Further, the complaint alleges, Defendant knew or should have known that Scoby was particularly unfit to perform patient care transportation services and be exposed to members of the general public and that allowing Scoby to perform such services "would allow and permit personal relationships to develop and expose members of the general public *** to physical harm." [1-1] at 2.

According to the complaint, Defendant knowingly allowed and permitted Scoby to provide patient care transportation services to Moore and to develop and maintain a personal relationship with her, exposing her to the risk of bodily harm and ultimately leading to her death. More particularly, the complaint alleges that Defendant committed the following negligent acts, which proximately caused Moore's death:

a. Failing to supervise and control its employee to ensure that he was not a danger to members of the general public;

b. Permitting and allowing an employee to remain in a position which required interaction with members of the general public, when Defendant knew that the employee had a history of criminal and violent behavior;

c. Failing to provide any warning of the employee's history of criminal and violent behavior;

d. Failing to institute procedures and rules to prevent or prohibit employees from establishing personal relationships with individuals who received patient care transportation services;

e. Failing to monitor and supervise the activities of employees who were known to have a history of criminal and violent behavior;

f. Allowing an employee with a history of criminal and violent behavior to hold a position in which he interacted and communicated with members of the general public; and

g. Failing to perform proper pre-hiring and employment-placement procedures.

Plaintiffs bring this negligence action against Defendant as the Special Administrators of Moore's estate and as her next of kin. Plaintiffs filed their complaint in the Circuit Court of Cook County, Illinois. Defendant removed the case to federal court on the basis of diversity jurisdiction. See [1]. Currently before the Court is Defendant's motion to dismiss Plaintiffs' complaint for failure to state a claim [9].

## II. Legal Standard

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The

Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

III. **Analysis**

"Because this is a diversity case, state substantive law controls, which means we will attempt to interpret and apply Illinois law." *Zahn v. North American Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (citing *Blood v. VH–1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012)). Plaintiffs' complaint is premised on a theory of negligence. "To prove a defendant's negligence under Illinois law, a plaintiff must establish 'the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach.'" *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1022 (7th Cir. 2018) (quoting *Buechel v. United States*, 746 F.3d 753, 763–64 (7th Cir. 2014)). "Whether a duty is owed presents a question of law for the court to decide, while breach of duty and proximate cause present questions of fact for the jury to decide." *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011); see also *Hutchison*, 910 F.3d at 1022.

Disposition of the instant motion turns on the "duty" element of the negligence claim. "The general rule in Illinois tort law is that one person has no duty to prevent the criminal acts of another." *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 649 (7th Cir. 2017) (citing *Simmons v. Homatas*, 925 N.E.2d 1089, 1099 (Ill. 2010)); see also *Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1178 (Ill. 2000). "However, the law recognizes at least four exceptions to this rule: (1) when the parties are in a special relationship and the harm is foreseeable; (2) when an employee is in imminent danger and this is known to the employer; (3) when a principal fails to warn his agent of an unreasonable risk of harm involved in the agency; and (4) when any party voluntarily or contractually assumes a duty to protect another from the harmful acts of a third

4

party." *MacDonald v. Hinton*, 836 N.E.2d 893, 898 (Ill. App. 2005). The second exception plainly does not apply because Moore was not Defendant's employee; the third does not apply because Moore was not Defendant's agent; and the fourth does not apply because there are no allegations in the complaint that Defendant contractually agreed to protect Moore from the harmful acts of third parties. Thus, the only one of the four exceptions that requires extensive analysis is the first, involving a special relationship.

Illinois courts have "recognized a duty to a third party to control the individual who is the source of the harm when a defendant has a special relationship with that person, such as *** a master-servant or employer-employee relationship." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1098 (Ill. 2012) (citing RESTATEMENT (SECOND) OF TORTS § 317 (1965)); see also *Bogenberger v. Pi Kappa Alpha Corporation, Inc.*, 104 N.E.3d 1110, 1121 (Ill. 2018) (citing *Simpkins*, 965 N.E.2d at 1098). In particular, "employers have a duty to act reasonably in hiring, supervising, and retaining their employees" to prevent them from harming others. *Anicich*, 852 F.3d at 649 (citing *Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998); *Platson v. NSM, America, Inc.*, 748 N.E.2d 1278, 1284 (Ill. App. 2001)).

Plaintiffs clarify in their response brief that their "duty" theory is based on RESTATEMENT (SECOND) OF TORTS § 317 (1965), which provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>     (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>     (ii) is using a chattel of the master, and
> (b) the master
>     (i) knows or has reason to know that he has the ability to control his servant, and

> (ii) knows or should know of the necessity and opportunity for exercising such control.

Illinois courts have adopted this section of the Restatement and "used it to limit employers' liability for negligent hiring, supervision, or retention" that results in an employee harming a third person. *Anicich*, 852 F.3d at 650. In particular, they "appl[y] this rule to avoid holding an employer liable simply because the tortfeasor and the victim know each other through work." *Id*. at 650-51 (citing *MacDonald*, 836 N.E.2d at 901-02; *Carter v. Skokie Valley Detective Agency, Ltd*., 628 N.E.2d 602, 605–06 (Ill. App. 1993); *Escobar v. Madsen Const. Co*., 589 N.E.2d 638, 638–40 (Ill. App. 1992)).

The Court agrees with Defendants that, under the facts pled in the controlling complaint, Plaintiff fails to state a claim for negligence based on section 317 or the line of Illinois cases applying that provision. Plaintiffs concede that Scoby was acting outside the scope of his employment when he killed Moore. See [15] at 1-2 ("Scoby was not officially working at the time of the deadly assault"); see also *Bremen State Bank v. Hartford Acc. & Indem. Co*., 427 F.2d 425 (7th Cir. 1970) (recognizing that, under Illinois law, employer is liable for negligent, willful, malicious, or criminal acts of its employees if such acts are committed during course of employment and in furtherance of business of employer, but if act is committed solely for benefit of employee, employer is not liable to injured third party). Plaintiffs also concede that Scoby was not on Defendant's premises when Moore was assaulted; instead, the assault took place in Moore's home. Finally, Plaintiffs allege no facts suggesting that Scoby assaulted Moore using any "chattels" of Defendant—such as a gun obtained from Defendant, see *Escobar*, 589 N.E.2d at 640, a vehicle provided by Defendant for use during work, see *Anicich*, 852 F.3d at 650, or any "supervisory authority" that Scoby had over Moore, see *id.* at 651.

Plaintiffs argue that these deficiencies do not preclude them from pursuing their negligence claim, because Defendant's hiring of Scoby and failure to prevent Scoby from forming a personal relationship with Moore led to Moore trusting Scoby, which in turn led to her death. Plaintiffs compare "[t]he trust gained by Scoby" to "the supervisory authority found to be actionable under Section 317 in *Anicich*." [15] at 3. In *Anicich*, an employer was found potentially liable for negligent hiring, supervision, and retention when one of its male supervisors killed and raped a female employee during a personal trip that he required her to go on by threatening to fire her or cut her hours if she refused. 852 F.3d at 646. The Seventh Circuit reasoned that "[i]njuries caused by using a chattel and injuries caused by abusing supervisory authority both occur 'by virtue of the [tortfeasor's] employment,' and not because the tortfeasor and victim merely know each other through their work." *Id*. at 652. The same reasoning does not apply to the facts of this case. Plaintiffs do not allege that Scoby had any supervisory authority over Moore. Moore was not a fellow employee against whom Scoby could take any "tangible employment actions." *Id*. at 651. Instead, Moore "merely kn[e]w" Scoby through his work of providing patient care transportation services. *Id*. at 652.

Further, the Illinois courts have rejected attempts by plaintiffs to rely on the trust or friendship formed by an assailant and victim during the course of the assailant's employment as a basis for imposing liability on an employer for negligent hiring, supervision, and retention. In *Carter* (which the Seventh Circuit cited in *Anicich*), a detective agency was sued for negligent employment after one of its security guards, while off duty, raped and killed a cashier whom he had met while providing security services at the cashier's gas station. *Carter*, 628 N.E.2 at 603. The security guard killed the cashier in her car after coming to the gas station on a day he was not scheduled to work and asking the cashier "to give him a ride if she was going in the same

7

direction," which she did. *Id.* at 604. Reversing a jury verdict in the cashier's mother's favor, the appellate court held that the security guard's negligent employment was not the proximate cause of the cashier's death because the security guard's "employment merely furnished a condition which made the rape and murder possible, but it was not the result of 'a natural and continuous sequence of events' set in motion by [the employer's] negligence and 'unbroken by any effective intervening cause.'" *Id*. at 605 (quoting *Escobar*, 589 N.E.2d at 639). The court explained that "[i]t was not the fact [the security guard] was a security guard that got him into [the cashier's] car and proximately caused her injuries and death; it was the fact that she trusted him because she knew him from work where he happened to be employed as a security guard." *Id*.; see also *MacDonald*, 361 Ill. App. 3d at 388 (holding that section 317 was not applicable to plaintiff's claim that defendant was negligent in hiring an employee who met and befriended plaintiff's son while they were co-workers and subsequently killed him, where murder did not occur on defendant's premises or with the instrumentalities of the employment); see generally *Doe v. Boy Scouts of America*, 4 N.E.3d 550, 561 (Ill. App. 2014) (under Illinois law, employer liability for negligent hiring and retention is "lacking as a matter of law where, though the plaintiff came to know the employee only through the employment, the injury neither occurred on the employer's premises nor involved the instrumentalities of employment").

Likewise, in this case, it was not the fact that Scobey provided patient care transportation services that got him into Moore's house and proximately caused her injuries and death, but rather the fact that Moore befriended Scobey while Scobey was providing such services. If the Court were to impose liability on Defendant under these circumstances, "'an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee.'" *Carter*, 628 N.E. 2d at 606. "Such a rule would

make any person with a conviction for any violent crime virtually unemployable if the employer knew, or the employment was such that the employer should have known, of the employee's criminal record," and "[n]o employer would hire such person for even the most menial of jobs if he would be liable for any criminal or intentional acts that the employee might inflict upon another who happened to have come into contact with him as a result of his employment." *Id*.

For these reasons, Plaintiffs' complaint fails to state a negligence claim against Defendant based on RESTATEMENT (SECOND) OF TORTS § 317 (1965) or governing Illinois law. Plaintiffs have not identified, and the Court has been unable to find in its own research, any other legal theory under which Defendant had a duty to protect Moore from the attack that Scoby inflicted on her when Scoby was off-duty and not using any instrumentalities of his employment. Of course, the facts of this case are extremely tragic. Nonetheless, the Court is bound to apply Illinois law in the same manner that the Court believes the courts of the state would apply it, and must "be careful to avoid the temptation to impose upon [the] state what it, or other jurisdictions, might consider to be wise policy." *Robinson v. McNeil Consumer Healthcare*, 671 F. Supp. 2d 975, 991 (N.D. Ill. 2009) (internal quotation marks and citation omitted). The Court does not believe that the Illinois courts would expand liability for negligence to the facts of this case and therefore must grant Defendant's motion to dismiss [9].

## IV. Conclusion

For these reasons, Defendant's motion to dismiss [9] is granted. This dismissal is without prejudice to Plaintiffs' opportunity to file a timely motion for leave to file an amended complaint by February 12, 2019, if they believe they can do so consistent with this Court's opinion and Rule 11. If no motion is filed by that date, the Court will enter an order converting the dismissal to be with prejudice and will enter a Rule 58 final judgment.

Dated: January 15, 2019                                          _____
                                                                 Robert M. Dow, Jr.
                                                                 United States District Judge